**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| ANGELA GARCIA, INDIVIDUALLY, | § | |
| AND AS NEXT FRIEND FOR DAMIAN | § | |
| GARCIA AND SARAH GARCIA, HER | § | |
| MINOR CHILDREN, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | Civil Action |
| | § | No. C-06-385 |
| v. | § | |
| | § | |
| SSP PARTNERS D/B/A CIRCLE K AND | § | |
| JOSIE ALMAGUER, | § | |
| | § | |
| | § | |
| Defendants. | § | |
| | § | |

**ORDER OF REMAND**

On this day came on to be considered Plaintiff's motion to remand this consolidated action back to state court (D.E. 14, "Remand Motion"). For the reasons stated herein, the Court grants Plaintiff's motion and REMANDS this consolidated action pursuant to 28 U.S.C. § 1447(c) to County Court at Law No. 4 of Nueces County, Texas, where it was originally assigned Cause Number 06-60816-4.[1]

I.   **Factual and Procedural Background**

Plaintiff Angela Garcia alleges that on September 18, 2003, while working at a Corpus Christi Circle K store, an individual named Oscar Moreno entered the store and stabbed Plaintiff, causing

---

[1]Cause No. 06-60816-4 is a consolidated action, Cause No. 06-61878-1 was merged and consolidated into Cause No. 06-60816-4 on August 31, 2006.

her serious bodily injury.  (D.E. 6, Exh. B(2), Cause No. 06-60814-4 First Amended Original Petition ("First State Action Amended Petition"), ¶ III).

### A.    First State Action (Cause No. 06-60816-4)

On March 29, 2003, Plaintiff filed a petition as next friend for her minor children, Damian Garcia and Sarah Garcia, against SSP Partners (d/b/a Circle K) ("Circle K") and Josie Almaguer.[2] (together, "Defendants").   Defendants were never served with Plaintiff's original petition.   (D.E. 6, Notice of Removal). Plaintiff filed a first amended original petition on June 30, 2006. (Id.).  Circle K was served with the amended petition on July 17, 2006, and Josie Almaguer was served on August 9, 2006.  (Id.).

In the amended petition, Plaintiff alleges negligence against the Defendants, and claims that Plaintiff's minor children are entitled to recover from the Defendants for loss of parental consortium.   (First State Action Amended Petition, ¶ IV). Plaintiff also requests a declaratory judgment that Plaintiff's minor children are not bound by an arbitration agreement signed by Plaintiff, and a temporary restraining order, temporary injunction and permanent injunction enjoining Circle K from proceeding with

---

[2]Josie Almaguer was the manager of the Circle K store where Plaintiff was stabbed.  Plaintiff first sued Ms. Almaguer as Josie "Doe" and later as Josie "Ramirez."  On July 31, 2006, Plaintiff filed a supplement to her first original petition correctly naming the defendant as Josie Almaguer.  (D.E. 6, Exh. B(3).

arbitration with respect to the claims of Plaintiff's minor children.  (Id. at ¶¶ VI-VII).

In response to Plaintiff's first original amended petition, both Defendants filed answers and applications for order for arbitration.  (D.E. 6, Exh. B(4) and B(5)).  Defendants requested an order "compelling Plaintiff to arbitrate her claims and causes of action asserted in this cause, if any, whether on her own behalf or on behalf of her children."  (Id.).

**B.    Second State Action (Cause No. 06-61878-1)**

On August 4, 2006, Plaintiff filed a petition on her own behalf against Circle K and Josie Almaguer, alleging negligence against the Defendants and claiming damages including past and future physical impairment, medical expenses, physical disfigurement, loss of wages and mental anguish.  (D.E. 6, Exh. B(6), Cause No. 06-61878-1 Original Petition ("Second State Action Petition"), ¶ IV).  Defendants were served with the petition on August 8, 2006.  (D.E. 6, Notice of Removal).

Previously, Plaintiff did not pursue an individual action against the Defendants because she signed an arbitration agreement with Circle K, preventing her from pursuing her claims in court. (Second State Action Petition, ¶ VI).  The agreement to arbitrate purported to be "in exchange for eligibility for [the Circle K] Plan's medical, disability, dismemberment, death and burial benefits."  (D.E. 6, Exh. B(4), Attach. A, Arbitration Agreement).

However, once Plaintiff filed suit against Circle K and Ms. Almaguer as next friend on behalf of her minor children, Circle K terminated Plaintiff's plan benefits. (D.E. 4, Exh. C, Letter from D. Suarez to Plaintiff). Plaintiff alleges that the termination of her benefits removed the consideration for the arbitration agreement, rendering the agreement unenforceable and allowing her to proceed on her claims in state court. (Second State Action Petition, ¶ VI). Plaintiff claims that the statute of limitations on her negligence claim should be tolled because Plaintiff proceeded under the arbitration agreement until Circle K terminated her benefits. (Id.).

Plaintiff also seeks to serve as representative for a class of Texas Circle K employees who signed arbitration agreements like the one Plaintiff signed with Circle K. (Second State Action Petition, ¶ VII). Plaintiff seeks unspecified "appropriate injunctive relief" on behalf of the class. (Id.).

### C. <u>Consolidation and Removal</u>

On August 28, 2006, Defendants filed a motion to transfer Plaintiff's second state action to County Court at Law No. 4, and to consolidate the two cases. (D.E. 4, Exh. E, Defendants' Motion to Transfer and to Consolidate). On August 31, 2006, Judge Klager granted Defendants' motion, and the second case was "consolidated and merged for all purposes into one action" bearing Cause No. 06-60816-4. (D.E. 6, Exh. C, Order Granting Defendants' Motion to

Transfer and to Consolidate). Defendants removed the consolidated action on September 5, 2006, alleging federal question jurisdiction.[3] (D.E. 1, Notice of Removal).[4]

## II. **Discussion**

### A. **General Removal Principles**

A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction. See 28 U.S.C. § 1441(a). A court, however, "must presume that a suit lies outside its limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." Howery v. Allstate Ins. Co., 243 F.3d 912, 916 (5th Cir. 2001); see also Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002). In evaluating the propriety of a removal, "[a]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." Manguno, 276 F.3d at 723; see also Acuna v. Brown & Root, Inc., 200 F.3d 335, 339 (5th Cir. 2000) ("doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction"); Shamrock Oil & Gas Corp.

---

[3]Defendants do not allege diversity jurisdiction as a basis for removal. (D.E. 6, Notice of Removal). All of the parties in the consolidated action are citizens of Texas for diversity purposes. (Id.) (including attachments).

[4]Defendants' Notice of Removal was struck for a technical defect (D.E. 3), and Defendants refiled their removal papers on September 11, 2006 (D.E. 6).

v. Sheets, 313 U.S. 100 (1941).

It is well-settled that the removing party bears the burden of showing that the removal was proper.  See Frank v. Bear Stearns & Co., 128 F.3d 919, 921-22 (5th Cir. 1997).  This burden extends to demonstrating both the jurisdictional basis for removal and compliance with the requirements of the removal statute.  See Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 362, 365 (5th Cir. 1995).  The question of whether jurisdiction exists is resolved by looking at the complaint at the time the petition for removal is filed.  See Pullman Co. v. Jenkins, 305 U.S. 534, 537-38 (1939); Miranti v. Lee, 3 F.3d 925, 928 (5th Cir. 1993).

**B.   ERISA Preemption**

**1.   Well-Pleaded Complaint Rule**

A federal district court has subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Generally, the determination of whether a court has federal question jurisdiction is resolved by application of the "well-pleaded complaint" rule.  Merrell Dow Pharms. v. Thompson, 478 U.S. 804, 808 (1986); Hart v. Bayer Corp., 199 F.3d 239, 243 (5th Cir. 2000).  This rule "provides that the plaintiff's properly pleaded complaint governs the jurisdictional inquiry.  If, on its face, the plaintiff's complaint raises no issue of federal law, federal question jurisdiction is lacking."  Hart, 199 F.3d at 243 (citing Franchise

<u>Tax Bd. v. Laborers Vacation Trust</u>, 463 U.S. 1, 10 (1983)).  "The plaintiff is thus the master of her complaint."  <u>Carpenter</u>, 44 F.3d at 366.  Where a plaintiff has a choice between federal and state law claims, he "may elect to proceed in state court on the exclusive basis of state law, thus defeating the defendant's opportunity to remove, but taking the risk that his federal claims will one day be precluded."  <u>Id.</u>

A defendant cannot establish federal question jurisdiction merely by showing that federal law will "apply" to a case or that there is a "federal issue" in the plaintiff's state law causes of action.  <u>Id.</u>; <u>see also</u> <u>Thompson</u>, 478 U.S. at 813.  Similarly, it is insufficient for a defendant to show that there is a federal defense (including the defense of preemption) to a plaintiff's state law claims.  <u>See</u>, <u>e.g.</u>, <u>Hoskins v. Bekins Van Lines</u>, 343 F.3d 769, 772 (5th Cir. 2003); <u>Carpenter</u>, 44 F.3d at 366.

Pursuant to the well-pleaded complaint rule, this Court does not have federal jurisdiction over the consolidated action.  As set forth below, the operative petitions in both the first and second state court actions do not raise issues of federal law. (<u>See</u> <u>generally</u>, First State Action Amended Petition; Second State Action Petition).

In the amended petition in the first state action, Plaintiff asserts, on behalf of her minor children, a *state-law* negligence claim against Defendants.  (First State Action Amended Petition, ¶

IV).  Plaintiff also seeks relief regarding the arbitrability of her minor children's *state-law* claims.  (Id. at ¶¶ VI, VII). Plaintiff seeks this relief "[p]ursuant to the *Texas Declaratory Judgment Act*," and she alleges that allowing the minor children's claims to proceed to arbitration would be "contrary to the public policy of the *State of Texas*."  (Id.).  Plaintiff does not raise any issues of federal law in this petition.

In the petition in the second state action, Plaintiff alleges a *state-law* negligence cause of action against Defendants.  (Second State Action Petition, ¶ V).  Plaintiff alleges that the *Texas* statute of limitations for her *state-law claim* was tolled during the period she pursued arbitration.  (Id. at ¶ VI).  Plaintiff also alleges that the arbitration agreement she signed was not enforceable pursuant to principles of contract law (Plaintiff alleges that the agreement was unconscionable, was signed under duress, and that the agreement fails for lack of consideration). (Id.).  The enforceability of the arbitration agreement is an issue to be decided under *Texas state law*.  See Webb v. Investacorp, Inc., 89 F.3d 252, 258 (5th Cir. 1996) ("When deciding whether the parties agreed to arbitrate [a] dispute ... courts ... apply *ordinary state-law principles* that govern the formation of contracts.") (citations and internal quotations omitted) (emphasis added).  Finally, in the second state action petition, Plaintiff also makes class action allegations regarding the arbitration

agreement, seeking unspecified injunctive relief for certain Texas Circle K employees.  (Second State Action Petition, ¶ VII). Plaintiff's class action allegations make no reference to federal law, rather they are limited to *Texas* employees and brought under the *Texas* Rules of Civil Procedure.  (Id.) (limiting the purported class to "Texas employees of Circle K" and seeking to serve as class representative pursuant to "Rule 42 of the Texas Rules of Civil Procedure").  Moreover, Plaintiff's class action allegations reference the enforceability of an arbitration agreement like the one Plaintiff signed with Circle K, which is an issue that is considered under *state-law* contract principles.  See Webb, 89 F.3d at 258.  This petition does not raise any issues of federal law.

As both operative petitions in the consolidated action do not raise issues of federal law, under the well-pleaded complaint rule there is no federal question jurisdiction.  Hart, 199 F.3d at 243

## 2.   **ERISA "Complete Preemption"**

Under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq., ("ERISA"), "complete preemption" occurs where a state-law cause of action falls within the scope of a particular enforcement provision in ERISA § 502.  See 29 U.S.C. § 1132; Arana v. Ochsner Health Plan, 338 F.3d 433, 440 (5th Cir. 2003).[5]  A state-law cause of action falls within the scope of an

_____

[5]ERISA § 502 states as follows in relevant part: "A civil action may be brought (1) by a participant or beneficiary ... (B) to recover benefits due to him under the terms of his plan, or to

ERISA § 502 enforcement provision when a plan participant or beneficiary seeks to recover benefits due or to enforce rights under an ERISA plan. See <u>Transitional Hosps. Corp. v. Blue Cross and Blue Shield of Tex.</u>, 164 F.3d 952, 954 (5th Cir. 1999) (state-law claims for breach of fiduciary duty, negligence, equitable estoppel, breach of contract, and fraud are preempted by ERISA when the plaintiff seeks to recover benefits owed under the plan to a plan participant); <u>Mem. Hosp. Sys. v. Northbrook Life Ins. Co.</u>, 904 F.2d 236, 245 (5th Cir. 1990). When a plan participant or beneficiary sues to recover benefits or enforce rights under an ERISA plan, the plaintiff's state-law causes of action are completely preempted and recast as federal causes of action. See <u>Giles v. NYLCare Health Plans, Inc.</u>, 172 F.3d 332, 337 (5th Cir.

---

clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

The rationale for complete preemption has been explained as follows:

> [T]he detailed provisions of § 502(a) [29 U.S.C. § 1132(a)] set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.

<u>Ingersoll-Rand Co. v. McClendon</u>, 498 U.S. 133, 144 (1990) (internal quotations omitted).

1999).   When there is complete preemption, federal question jurisdiction exists regardless of how the complaint is pleaded, and removal is proper.   See <u>id.</u>

### 3.   **ERISA "Conflict Preemption"**

There is a second type of preemption under ERISA, referred to as "conflict" or "ordinary" preemption.   <u>See Bennett v. Life Ins. Co. of North Am.</u>, 398 F.Supp.2d 533, 538 (N.D. Tex. 2005). Conflict preemption applies when a state law claim falls outside the scope of ERISA § 502, but the claim is still preempted by ERISA § 514.   See <u>Giles</u>, 172 F.3d at 337.   ERISA § 514 states that ERISA's provisions "supersede any and all state common laws insofar as they relate to any employee benefit plan".  29 U.S.C. § 1144(a). Although ERISA § 514 conflict preemption has been broadly construed, the mere fact that an action "relates to" an ERISA plan does not recast a plaintiff's state-law claims as federal claims. See <u>Giles</u>, 172 F.3d at 337.   Rather, conflict preemption is defensive in nature and, unlike complete preemption, does not displace the well-pleaded complaint rule.   See <u>id.</u> ("Rather than transmogrifying a state cause of action into a federal one –- as occurs with complete preemption –- conflict preemption serves as a *defense* to a state action.") (emphasis in original).   Further, **"[t]he presence of conflict-preemption does not establish federal question jurisdiction.**   <u>Id.</u> (emphasis added); <u>see also</u> <u>Vega v. Nat'l Life Ins. Servs., Inc.</u>, 188 F.3d 287, 291 n. 3 (5th Cir.

1999).

In both operative petitions in this consolidated action, Plaintiff is not suing as a plan participant or beneficiary seeking to recover benefits or to enforce rights under an ERISA plan.[6] Rather, certain of Plaintiff's claims may arguably be classified as "relating to" an ERISA plan.   However, this is only conflict preemption under ERISA § 514, not complete preemption under ERISA § 502.   See 29 U.S.C. §§ 1132(a)(1)(B) and 1142(a); see also Transitional Hosps. Corp., 164 F.3d at 954.   With conflict preemption, Plaintiff's petitions are still "governed by the well-pleaded complaint rule ... [and conflict] preemption *is no basis for removal jurisdiction*." Vega v. Nat'l Life Ins. Services, Inc., 188 F.3d 287, 291 (5th Cir. 1999); see also Giles, 172 F.3d at 337 ("[w]hen the doctrine of complete preemption does not apply, but

_____

[6]As noted above, Plaintiff brings negligence claims in both petitions, she seeks relief regarding the arbitrability of her minor children's claims, she seeks a tolling of the negligence statute of limitations, and she brings class action allegations regarding the arbitration agreement.  (First State Action Amended Petition, ¶¶ IV-VII; Second State Action Petition ¶¶ V-VII).  In none of these claims does Plaintiff seek to enforce rights under an ERISA plan or seek to recover any ERISA plan benefits.  (Id.). Even in the class action allegations, Plaintiff never specifies what type of injunctive relief or damages she seeks for the purported class, and she only generally addresses the enforceability of the type of arbitration agreement she signed with Circle K.  (Second State Action Petition, ¶ VII).  Plaintiff never seeks, on her behalf or on behalf of the class, to recover benefits or enforce rights under the Circle K plan.  (Id.). While Plaintiff's class allegations arguably do "relate to" the plan and support ERISA conflict preemption, as they are worded in the petition they do not support ERISA complete preemption. (Id.).

the plaintiff's state claim is arguably preempted under [ERISA] § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption. ***It lacks the power to do anything other than remand to the state court***") (emphasis added). As the well-pleaded complaint rule governs and Plaintiffs' petitions do not raise issues of federal law, this Court has no choice but to remand the consolidated action back to state court.

### C. <u>Defendants Waived Any Potential Right to Remove</u>

Moreover, any right that Defendants might have had to remove this consolidated action was waived when Defendants sought extensive affirmative relief in the state court.

#### 1. <u>Waiver of the Right to Removal</u>

The Fifth Circuit has held that even a defendant who files a timely removal petition "may have waived its right to removal by proceeding to defend the action in state court or otherwise invoking the processes of that court." <u>Demco, Inc. v. Employers Cas. Co.</u>, 792 F.2d 478, 482 (5th Cir. 1986); <u>see</u> <u>also</u> <u>Jacko v. Thorn Americas, Inc.</u> 121 F.Supp.2d 574, 576 (E.D. Tex. 2000). "A defendant may lose or waive the right to removal by taking some substantial defensive action in the state court before petitioning for removal ... if a party has good ground to remove a case to federal court, he cannot experiment on his case in state court before removing the case to federal court." <u>Gore v. Stenson</u>, 616

F.Supp. 895, 897 (S.D. Tex. 1984).

A defendant's waiver of its right to removal must be "clear and unequivocal", and indicate a specific, positive intent to proceed in state court." Gore, 616 F.Supp. at 898; Jacko, 121 F.Supp.2d at 576. In determining whether a defendant has clear and specific intent to proceed in state court, courts will consider the following two factors:

> (1)   whether the defendant's actions in state court were taken for the purpose of preserving the status quo, or whether the defendant's actions manifested an intent to litigate the merits of the claim; and

> (2)   whether the removal can be characterized as an appeal from an adverse judgment in state court.

See Jacko, 121 F.Supp.2d at 576.

In general, actions such as filing an answer and affirmative defenses are considered to be actions taken for the purpose of preserving the status quo. See Gore, 616 F.Supp. at 897-98; John H. Carney & Assocs. v. State Farm Lloyds, 376 F.Supp.2d 697, 703 (N.D. Tex. 2005). However, actions such as filing motions to dismiss, summary judgment motions, or cross-claims are considered to demonstrate a defendant's "clear intent to have the state court proceed on the merits of the case." Jacko, 121 F.Supp.2d at 576; see also Bolivar Sand Co. v. Allied Equip., Inc., 631 F.Supp. 171, 173 ("actions that may result in a disposition on the merits of the state court action, in whole or in part, have ... been found to evidence the requisite intent"); Certain Underwriters at Lloyd's v.

<u>Bristol-Myers Squibb Co.</u>, 51 F.Supp.2d 756, 760 (E.D. Tex. 1999) (finding that defendant waived the right to remove where it had filed answers and motions, severed a claim, and conducted discovery in the state court); <u>Johnson v. Heublein Inc.</u>, 224 F.3d 236, 244 (5th Cir. 2000) (holding that defendants waived their right to remove by filing a motion to dismiss and a motion for summary judgment in state court, "thus invoking the jurisdiction of the state court in resolving the issues presented by the original complaint.") <u>Zbranek v. Hofheinz</u>, 727 F.Supp. 324, 325 (E.D. Tex. 1989).

### 2.   <u>Defendants' Waiver of Any Possible Right to Remove</u>

In this case, Defendants took several affirmative steps in the state court prior to removal of the consolidated action, thereby waiving any possible right to remove the cases.

First, on July 24, 2006, both Defendants filed motions to compel arbitration in the first state action (D.E. 6, Exh. (B)4, (B)5).  A motion to compel arbitration is a request for affirmative relief, it is not merely a ministerial act seeking to preserve the status quo, such as filing a general denial or asserting affirmative defenses.  <u>See</u> <u>Quanto Int'l Co., Inc. v. Lloyd</u>, 897 S.W.2d 482, 487 (Tex. App.--Houston [1st Dist.] 1995) (a "request to compel arbitration is a claim for 'affirmative relief'") (internal quotations omitted); <u>Arnold v. Garlock Inc.</u>, 288 F.3d 234, 237 (5th Cir. 2002) (same); <u>Tri-State Consumer Ins. Co. v.</u>

Prop. & Cas. Mgmt. Sys., Inc., 2003 WL 24037958 , *1 (Tex. App.--
Eastland 2003) ("A motion to compel arbitration seeks affirmative
relief and recognizes a trial court's jurisdiction.").[7]

Further, on August 28, 2006, Defendants sought affirmative
relief by filing their motion to transfer and consolidate
Plaintiff's two cases. (D.E. 4, Exh. E, Defendants' Motion to
Transfer and to Consolidate). Defendants argued in their six page
motion that consolidation would "save the Nueces County Courts from
addressing the same issues, witnesses and evidence in two
proceedings when they could be addressed as one." (Id. at p. 6).
Defendants' motion reads as if Defendants were planning to litigate

_____

[7]Defendants claim that they did not waive any right to
remove, because when they filed the arbitration motions the first
state action was not removable. (D.E. 11, Defendants' Response,
pp. 13, 15-16). This argument is not persuasive, because
Defendants also claim that Plaintiff alleged an issue of federal
law in the first state action, by seeking declaratory and
injunctive relief as to the arbitrability of the claims of her
minor children. (Id. at p. 26). Defendants claim that
"Plaintiffs have *disingenuously represented* that the
determination of whether the children are bound is an issue of
state law for the state courts", and that "the issue whether a
nonsignatory should be bound to a valid arbitration agreement,
like in this case ... *has been found by the Fifth Circuit to be
an issue of federal law.*" (Id. at p. 26) (emphasis added). This
Court finds that the arbitrability of non-signatories is not an
exclusive issue of federal law, in fact the Texas Supreme Court
case cited by Defendants applied state law to the issue. See In
re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 738 (Tex. 2005);
see also Fleetwood Enters., Inc. v. Gaskamp, 280 F.2d 1069, 1074-
77 (5th Cir. 2002). However, Defendants nonetheless allege in
their response that Plaintiff asserted a federal claim in the
first case, although Defendants made no move to remove the case
within the allotted time period, and instead filed motions to
compel arbitration. (D.E. 11, Defendants' Response, p. 26).

the consolidated action in state court, there is no indication of any objection to the state court's jurisdiction. (Id. at pp. 4-6). Moreover, if Defendants were planning to remove the second case, the basis for removal existed at the time they filed the motion to transfer and consolidate. (D.E. 6, Notice of Removal). In fact, twenty-three of the allotted thirty days during which removal was allowed had already passed. (Id.). Rather, Defendants first availed themselves of the state court to seek the transfer and consolidation, and only after they received their requested relief did they seek to remove the consolidated cases to this Court.[8]

Further, at the August 31, 2006 hearing on Defendants' motion to transfer or consolidate, defense counsel represented to the state court that the Defendants would not object to, and would even pay for, an ad litem for Plaintiff's minor children after the cases were consolidated. (D.E. 4, Exh. F, Affidavit of Kevin Grillo; D.E. 11, Defendants' Response, p. 22 ("[defense] counsel agreed

---

[8]Defendants note that they brought their motion to transfer and consolidate "subject to and without waiving any right to assert that another forum, including arbitration, is more applicable". (D.E. 4, Exh. E, p. 1). Defendants' formulaic statement is on the first page, in the opening paragraph of their motion. (Id.). Defendants do not refer to removal to the federal court, and in the actual substance of their motion, they make representations that read as if they intended to litigate the consolidated cases in Nueces County. (Id. at pp. 4-6). Moreover, as noted above, when Defendants filed their motion to consolidate, they could have already removed the second case to federal court. (D.E. 6, Notice of Removal). Presumably, if federal court was the other "applicable forum" that Defendants were referring to in their motion's opening paragraph, they already would have removed the second case and would not instead be seeking relief from the state court. (D.E. 4, Exh. E, p. 1).

that a guardian ad litem could be appointed, and to even pay for the guardian.")).  The state court judge did not enter the order of consolidation until after defense counsel made those representations about the ad litem.  (Affidavit of Kevin Grillo). However, there is no record of any appointment of an ad litem for Plaintiff's minor children.  Rather, the Defendants removed the entire consolidated action five days later, on September 5, 2005.[9] (D.E. 1, Notice of Removal).

Defendants sought (and obtained) extensive affirmative relief in the state court before they attempted to remove this case.  By their actions and representations, Defendants did not simply seek to preserve the status quo.  Rather, Defendants clearly and unequivocally sought to waive any possible right of removal.

**III. <u>Conclusion</u>**

For the reasons stated above, this Court determines that it does not have jurisdiction over the above-styled consolidated action.  The Court hereby GRANTS Plaintiff's Motion to Remand, and this consolidated action is hereby REMANDED pursuant to 28 U.S.C. § 1447(c) to the County Court at Law No. 4 of Nueces County, Texas,

---

[9]The hearing took place on a Thursday, and Defendants removed the consolidated action the following Tuesday, the first business day after the long Labor Day weekend.  (D.E. 6).

where it was originally assigned Cause Number 06-60816-4.

SIGNED and ENTERED this 3rd day of October, 2006.

_____
Janis Graham Jack
United States District Judge